# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00572-CV

**State of Texas, by and through Gregg Abbott, the Attorney General, Appellant**

**v.**

**Marion Young, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-05-003982, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

## O P I N I O N

Texas' wrongful-imprisonment statute, chapter 103 of the civil practice and remedies code, waives sovereign immunity and authorizes claims against the State for compensation where the claimant (1) "has served in whole or in part a sentence in prison under the laws of this state," and (2) has either "received a full pardon on the basis of innocence for the crime for which the person was sentenced" or "has been granted relief on the basis of actual innocence for the crime for which the person was sentenced." Tex. Civ. Prac. & Rem. Code Ann. § 103.001(a) (West 2005); *see id.* §§ 103.001-.154 (West 2005 & Supp. 2007).[1] The central issue in this appeal requires us to construe the phrase "has obtained relief on the basis of actual innocence" and determine whether it includes a claimant who was convicted of a crime, served prison time pending appeal, and ultimately obtained

---

[1] For convenience, we will cite to the current version of the statute except when substantive differences in an applicable prior version are relevant.

acquittal on grounds of legal insufficiency of the evidence in his direct appeal. We conclude that it does not include such claimants, but instead manifests the legislature's intent to limit chapter 103's waiver solely to claimants who have obtained habeas corpus relief based on "actual innocence."

## BACKGROUND

Marion Young was convicted in 2001 in Burleson County for delivery of a controlled substance, resulting in revocation of his parole for earlier offenses. He was returned to custody and incarcerated pending appeal. Young appealed to the First Court of Appeals, which ultimately reversed and rendered a judgment of acquittal, holding that the evidence was legally insufficient to support Young's conviction because it had been based on the testimony of a confidential informant without adequate corroborating evidence. *Young v. State*, 95 S.W.3d 448, 449-52 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Young subsequently sought compensation under chapter 103.

Chapter 103 authorizes wrongful imprisonment claimants to file either an administrative claim with the Comptroller under subchapter B of the statute, which would provide recovery of a flat $25,000 per year of wrongful imprisonment, or a judicial claim under subchapter C, which would provide recovery for actual lost earnings, medical expenses, and legal fees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 103.051-.052 (administrative claim), §§ 103.101-.105 (suit). However, it further provides that "a person may not seek compensation under both Subchapters B and C." *Id*. § 103.002. Young initially filed an administrative claim. At the time, chapter 103 required administrative claimants to submit to the Comptroller "a certification of the claimant's actual innocence of the crime for which the claimant was sentenced that is signed

2

by the attorney representing the state in the prosecution of felonies in the counties in which the sentence was rendered." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 1310, § 1, sec. 103.051(a), 2003 Tex. Gen. Laws 4748, 4749 (amended 2007) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 103.051(a) (West Supp. 2007)). After the local prosecutor refused to provide him the required certification, Young pursued the alternative remedy of a lawsuit under subchapter C.

The State filed a plea to the jurisdiction, which the district court denied. The State appealed from the district court's order denying its plea. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2007).

## ANALYSIS

The State brings two issues on appeal, contending: (1) Young's wrongful-imprisonment suit, which was predicated on his acquittal on direct appeal based on legal insufficiency of the evidence, does not fall within chapter 103's waiver of sovereign immunity; and (2) Young's suit is barred because he had previously filed an administrative claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.002. In addition to his responsive briefing, Young has filed two motions urging that we take judicial notice of letters that he obtained from the author and Senate sponsor of the bill that added chapter 103's election-of-remedies provision, the Honorable Rodney Ellis. Each letter expresses Senator Ellis's views regarding the purpose or intent of that provision. Young relies on these letters in regard to the State's second issue. The State has filed a motion to strike Young's second motion for judicial notice and a related supplemental brief. We need address only the State's first issue, as it is decisive.

3

Whether Young can recover compensation under chapter 103 through either an administrative or judicial claim turns on whether he "has been granted relief on the basis of actual innocence for the crime for which the person was sentenced" so as to come within the statute's waiver of sovereign immunity. Tex. Civ. Prac. & Rem. Code Ann. § 103.001(a); *see id.* § 103.101(a). Young asserts that this Court has previously held that a chapter 103 claimant who obtained relief from his conviction on direct appeal based on legal insufficiency of the evidence "has been granted relief on the basis of actual innocence" under chapter 103. He refers us to language in *Heimlich v. State*, 107 S.W.3d 643 (Tex. App.—Austin 2003, no pet.).

In that case, Heimlich, who had been convicted of theft, obtained a reversal and acquittal on direct appeal on grounds that the evidence was legally insufficient to prove the essential element that he had stolen property "owned" by another person. *Heimlich v. State*, 988 S.W.2d 382, 384-85 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Heimlich, who had served a portion of his sentence in prison pending his appeal, *Heimlich*, 107 S.W.3d at 644 & n.2, later filed suit against the State in Travis County district court seeking compensation under chapter 103. At the time Heimlich initially filed suit, chapter 103 authorized claims for compensation related to wrongful imprisonment if the claimant:

(1)     has served in whole or in part a sentence in prison under the laws of this state;

(2)     pleaded "not guilty" to the charge for which he was convicted and that led to the imprisonment;

(3)     is not guilty of the crime for which he was sentenced; and

4

(4)     has received a full pardon for the crime and punishment for
         which he was sentenced.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3307.

During its 77th Regular Session in 2001, the legislature extensively revised chapter 103. Act of May 26, 2001, 77th Leg., R.S., ch. 1488, 2001 Tex. Gen. Laws 5280. Among other key changes, compensation claims were authorized for persons who had "served in whole or in part a sentence in prison under the laws of this state," and *either* "received a full pardon *on the basis of innocence* for the crime for which the person was sentenced" *or* was "*granted relief on the basis of actual innocence* for the crime for which the person was sentenced." Act of May 26, 2001, 77th Leg., R.S., ch. 1488, § 1, sec. 103.001, 2001 Tex. Gen. Laws 5280, 5280 (now codified at Tex. Civ. Prac. & Rem. Code Ann. § 103.001(a)) (emphasis added). The amendments were made applicable to pending suits. Act of May 26, 2001, 77th Leg., R.S., ch. 1488, § 4, 2001 Tex. Gen. Laws 5280, 5284. Also during the pendency of his suit, the counsel who had filed Heimlich's original petition withdrew. Heimlich, now acting pro se, subsequently filed an amended petition in which he acknowledged that the legislature had amended the statute but pled that "[t]his action is brought under the code as it existed prior to revision."

The State filed a traditional motion for summary judgment on Heimlich's claims. Seizing the opportunity created by "Heimlich's insistence on bringing the action under the old code," *Heimlich*, 107 S.W.3d at 644, the State relied solely on the ground that Heimlich had not "received a full pardon for the crime and punishment for which he was sentenced," as had been

5

required under the former version. The district court granted the State's motion without stating its grounds and rendered final judgment dismissing Heimlich's suit. Heimlich appealed to this Court.

This Court affirmed the district court's judgment in part and reversed and remanded in part. Of relevance here, the Court reversed summary judgment on Heimlich's chapter 103 claim. The Court emphasized that the amended version of chapter 103 governed the case, that "[t]here is no provision for electing to proceed under the former statute," and that "[t]he State's motion for summary judgment addresses only the grounds under the former statute." *Id.* at 645-46. However, the Court went on to suggest that "[o]n appeal, Heimlich argues that the district court erred by granting summary judgment against his claims because the court of appeals reversed his conviction on grounds that he did not commit a crime; he is thereby essentially claiming that he has 'been granted relief on the basis of actual innocence of the crime.'" *Id.* In the context of this discussion, the Court also stated, "Heimlich's pleadings are sufficient to state a claim under the amended statute." *Id.* at 646.

Emphasizing the statement that "Heimlich's pleadings are sufficient to state a claim under the amended statute," Young views *Heimlich* as holding that a criminal defendant who obtains reversal on legal-sufficiency grounds "has been granted relief on the basis of actual innocence for the crime for which the person was sentenced" so as to come within chapter 103's waiver of sovereign immunity. We disagree. *Heimlich* reflects that the parties had joined issue regarding only an element unique to the pre-2001 version of chapter 103. *See id.* at 644 (observing that Heimlich "asserted [that] . . . his petition was brought under the pre-revision code" and that "[n]oting Heimlich's insistence on bringing the action under the old code, the State moved for summary

6

judgment based on his failure to show that he had 'received a full pardon for the crime and punishment for which he was sentenced' as required by the former statute."). We have also reviewed the briefing from *Heimlich*, and it further confirms that, with regard to chapter 103, the parties briefed only the implications of the pre-2001 version's pardon requirement.[2] Observing that the State had relied solely on a summary-judgment ground relevant to a version of chapter 103 that no longer governed Heimlich's claim, the Court correctly reversed. *Id.* at 645-46; *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339-41 (Tex. 1993) (summary judgment must stand or fall on grounds expressly asserted in the motion). That is the holding in *Heimlich* and was alone sufficient to support the judgment.

The gravamen of the Court's discussion of the 2001 amendments is that it broadly construed Heimlich's arguments such that this pro se litigant would not be held to have pled himself out of court through his misguided reliance on the pre-2001 code. It characterized Heimlich's arguments on appeal "that the district court erred by granting summary judgment against his claims because the court of appeals reversed his conviction on grounds that he did not commit a crime" as "essentially claiming that he has 'been granted relief on the basis of actual innocence of the crime.'" *Heimlich*, 107 S.W.3d at 645-46. In this context, the Court added dicta, without elaboration or further analysis, in the statement that "Heimlich's pleadings are sufficient to state a claim under the amended statute." *Id.* at 646.

---

[2] Heimlich argued that the pardon requirement was merely "directory," unconstitutional, "moot," and should be ignored in light of the code's broader goal of compensating the wrongfully imprisoned.

Although the Court, in theory, can raise jurisdictional issues sua sponte, its discussion relating to chapter 103's post-2001 "actual innocence" language, in context with the issues actually presented by the parties and necessary to the decision, is simply dicta. The post-2001 version of the statute was not at issue in *Heimlich*, nor was any question regarding Heimlich's right to proceed under the statute or recover under the statute. This Court simply acknowledged that Heimlich was attempting to state a claim under chapter 103 and concluded that his claims should not be summarily disposed of merely because he mistakenly cited to and relied on an inapplicable prior version of the statute. We construe this Court's opinion to, at most be, an advisory opinion regarding whether Heimlich's allegations came within chapter 103's waiver.

We thus confront—as an issue of first impression—whether Young, by obtaining a reversal of his conviction and acquittal on direct appeal based on legal-sufficiency grounds, "has been granted relief on the basis of actual innocence for the crime for which the person was sentenced" so as to come within chapter 103's waiver of sovereign immunity. Our resolution of that question turns on statutory construction. Statutory construction presents a question of law that we review de novo. *E.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004);

8

*Taylor v. Firemen's and Policemen's Civil Serv. Comm'n of City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2)-(3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "consequences of a particular construction." *Id.* § 311.023(1)-(3), (5) (West 2005). We also presume that the legislature acted with knowledge of the background law. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

Furthermore, when construing chapter 103 in particular, we must also employ special rules that are implicated when a statute is asserted to have waived sovereign immunity. *See State v. Oakley*, 227 S.W.3d 58, 62 (Tex. 2007). All things being equal, sovereign immunity would bar a suit against the State for damages caused by wrongful imprisonment. *See City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007) ("We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity."); *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) ("Sovereign immunity protects the State from lawsuits for money damages."). Consequently, at common law, claimants could recover "nothing from a state that wrongfully imprisoned them."

9

*Oakley*, 227 S.W.3d at 62. When determining the extent to which chapter 103 waives this immunity, we are bound to comply with the legislature's mandate that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2007); *see Oakley*, 227 S.W.3d at 62. This requirement embodies the principle that courts should generally defer to the legislature to decide whether or to what extent sovereign immunity should be waived, so as to "preserve the legislature's interest in managing state fiscal matters through the appropriations process." Tex. Gov't Code Ann. § 311.034.[3]

If the legislature has not waived sovereign immunity for Young's claim for wrongful-imprisonment damages, the district court lacked subject-matter jurisdiction to render a judgment on that claim. *IT-Davy*, 74 S.W.3d at 855. As the plaintiff attempting to sue the State, Young had the burden of affirmatively establishing that his claim fell within chapter 103's sovereign-immunity waiver. *Id.* In evaluating whether Young met this burden, we look to his

---

[3] *See also City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) ("This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns. In a world with increasingly complex webs of government units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require. The extent to which any particular city, county, port, municipal utility district, school district, or university should pay damages involves policy issues the Legislature is better able to balance."); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) ("A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes."); *Texas Natural Res. Conservation v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) ("We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function . . . [T]he Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear.").

pleadings but may also consider evidence bearing on the jurisdictional inquiry. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 549 (Tex. 2000); *Hendee v. Dewhurst*, 228 S.W.3d 354, 366 (Tex. App.—Austin 2007, pet. denied).

The State argues that "relief based on actual innocence" in chapter 103 is a phrase that has acquired a specific, technical meaning that denotes collateral challenges to criminal convictions, based on "actual innocence," through habeas corpus. Because Young has not obtained habeas corpus relief based on actual innocence, the State maintains, his claim for wrongful-imprisonment damages is barred by sovereign immunity. Young acknowledges that he did not obtain relief from his conviction via habeas corpus. He asserts, however, that the First Court of Appeals's reversal of his conviction on direct appeal constitutes "relief based on actual innocence." Young suggests that not all criminal defendants who obtain reversals on direct appeal, or even those who prevail on sufficiency-of-the-evidence grounds, would necessarily be entitled to recover under chapter 103. Instead, Young relies on what he terms the "extremely rare," "very limited," or particularly compelling nature of his particular grounds for reversal—"the evidence is, due to the application of statutes, legally insufficient to support a conviction." Such a holding, Young urges, constitutes a judicial determination that he was "actually innocent" and that his acquittal therefore constituted "relief based on actual innocence." We agree with the State that the legislature has not waived sovereign immunity for Young's claim.

The legislature's use of the phrase "has been granted relief based on actual innocence," in the context of Texas jurisprudence, manifests intent to limit chapter 103 recoveries

11

solely to claimants who have obtained relief from their convictions through habeas corpus based on "actual innocence" grounds. "Actual innocence" is a term of art that has consistently been used by Texas courts to describe a basis for collaterally attacking, through habeas corpus, a final criminal conviction on constitutional grounds. The Texas Court of Criminal Appeals has recognized two types of actual innocence claims. A "bare" innocence claim "involves a substantive claim in which the applicant asserts his bare claim of innocence based solely on newly discovered evidence." *Ex parte Tuley*, 109 S.W.3d 388, 390 (Tex. Crim. App. 2002) (citing *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002) and *Ex parte Elizondo*, 947 S.W.2d 202, 208 (Tex. Crim. App. 1996)). The applicant "must show that the new evidence unquestionably establishes his innocence," which "mean[s] that the applicant must show by clear and convincing evidence that no reasonable juror would have convicted the applicant." *Id.* at 390 (citing *Elizondo*, 947 S.W.2d at 208-09).[4] The second type of actual innocence claim is one in which actual innocence is not itself the basis for relief, but is a "gateway" for obtaining relief based on an otherwise-barred complaint of constitutional error at trial. *Id.*; *Franklin*, 72 S.W.3d 675-76. In the second type of actual innocence claim, the claimant must show that the constitutional error "probably resulted" in the conviction of one who was actually innocent; i.e., "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 676.

Importantly, Texas courts do not make a determination of "actual innocence" when acquitting a defendant at trial or on direct appeal. In the trial court, unless and until a criminal

---

[4] The court of criminal appeals has termed this "a Herculean task." *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006).

12

defendant is convicted, he is *presumed* innocent, and the State has the burden of establishing a defendant's guilt beyond a reasonable doubt. *See id.* at 678; *Elizondo*, 947 S.W.2d at 202. If the State fails to meet this burden, either as a factual matter or because the evidence is legally insufficient, the defendant is acquitted. Although such defendants are sometimes termed "found innocent," the issue actually being adjudicated is whether the State had met its burden of proving *guilt*. With regard to the requirement of legally sufficient evidence in particular, the issue is whether "the government has met its constitutional burden of proving the defendant's guilt beyond a reasonable doubt." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 443 (1993) (Blackmun, J., dissenting)). This standard applies whether a defendant is actually guilty or innocent of the crime for which he was charged or convicted, as "even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson v. Virginia*, 443 U.S. 307, 323-24 (1979). Consequently, if the State fails to meet its burden of proving a defendant's guilt, a defendant is acquitted regardless whether, in truth, he is innocent or guilty.

It is only after a judgment of conviction becomes final that a judicial determination of *actual* innocence—not just whether the State met its burden of proving guilt—would be made. Upon becoming final, a conviction is presumed valid, and the burden shifts to the convicted defendant to demonstrate a constitutional violation by "proving his innocence, not just raising doubts about his guilt." *Franklin*, 72 S.W.3d 677; *Elizondo*, 947 S.W.2d at 207. Furthermore, a convicted defendant generally cannot raise through habeas corpus grounds that were litigated at trial or on direct appeal. *See Ex parte Brown*, 205 S.W.3d 538, 545-46 (Tex. Crim. App. 2006). Consequently,

13

a convicted defendant cannot collaterally attack his conviction through habeas corpus on grounds of legal insufficiency of the evidence—whether the State met its burden at trial—but must affirmatively prove "actual innocence," as described above. The court of criminal appeals has repeatedly recognized these distinctions between legal-sufficiency challenges, which it holds not to be cognizable in habeas corpus, and "actual innocence" challenges, which are. *See, e.g.*, *Ex parte Santana*, 227 S.W.3d 700, 705 (Tex. Crim. App. 2007); *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Tuley*, 109 S.W.3d at 392; *Franklin*, 72 S.W.3d at 677; *Elizondo*, 947 S.W.2d at 206.

In this jurisprudential context, the legislature's use of the phrase "has been granted relief based on actual innocence" thus connotes both a specific standard of proof and a procedural framework through which such relief is obtained—a writ of habeas corpus on grounds of "actual innocence." "Actual innocence" is a term unique to the habeas context, and it is significant that the legislature chose to require claimants to have been "granted relief on the basis of *actual innocence*" instead of using broader, more general, or more colloquial terms like ". . . on the basis of *being not guilty* . . . ," ". . . on the basis of *insufficient evidence* of the crime. . . ," or even ". . . on the basis of *being innocent* of the crime." Furthermore, by restricting the waiver to a claimant who "*has been granted relief* on the basis of actual innocence for the crime," as opposed to a formulation like "*is* actually innocent . . . ," the legislature clearly contemplated that a claimant cannot prove "actual innocence" (however defined) in the same proceeding in which he asserts his wrongful-imprisonment claim, but must have previously obtained such "relief." As this Court has previously observed, "whether a person was wrongfully convicted will not be contested in a

Chapter 103 claim because a claimant must have already been pardoned or granted relief on the grounds of actual innocence to be entitled to compensation." *State v. Oakley*, 181 S.W.3d 855, 864 (Tex. App.—Austin 2005), *rev'd on other grounds*, *Oakley*, 227 S.W.3d at 61-62.

Young suggests that construing chapter 103's "relief based on actual innocence" in this manner would create an inconsistency between the clear-and-convincing standard of proof to obtain habeas corpus relief on a "bare" actual-innocence claim, *see Ex parte Tuley*, 109 S.W.3d at 390, and chapter 103's preponderance-of-the-evidence standard of proof. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.102 ("The petitioner must establish by a preponderance of the evidence that the petitioner is entitled to compensation and the amount of compensation to which the petitioner is entitled."). Young overlooks the implications of the requirement that the claimant "*has obtained* relief based on actual innocence," which, again, denotes that the claimant had already obtained habeas corpus relief based on actual innocence as a prerequisite to his chapter 103 claim. What a chapter 103 claimant must prove, in other words, is that he has *previously obtained* habeas relief from his conviction based on "actual innocence," not that he *is* "actually innocent" under the standards of proof of obtaining habeas relief on that ground.

We are to presume that the legislature was aware of the implications of the language it chose, *see* Tex. Gov't Code Ann. § 311.011(b); *Acker*, 790 S.W.2d at 301, and that it acted deliberately in making that choice. *CenterPoint Energy Houston Electric, LLC v. Gulf Coast Coalition of Cities*, 252 S.W.3d 1, 15 (Tex. App.—Austin 2008, pet. filed) ("We presume that every word was deliberately chosen and that excluded words were left out on purpose.") (*citing USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494

(Tex. App.—Austin 2004, pet. denied). In fact, the legislative record here demonstrates that the legislature specifically rejected a proposal to expand chapter 103's waiver to include claimants who obtained appellate reversals of their convictions based on legally insufficient evidence. As introduced, the bill that became the 2001 amendments to chapter 103 would have permitted claims by a person who "has had the conviction reversed on appeal on the basis of legally insufficient evidence to sustain the conviction or of prosecutorial misconduct and the person is ultimately exonerated of the crime by dismissal or acquittal." Tex. S.B. 536, 77th Leg., R.S. (2001). This language was deleted in a Senate committee substitute and replaced by the more restrictive "has been granted relief on the basis of actual innocence of the crime for which the person was sentenced." S.J. of Tex., 77th Leg. 3691 (2001). We are bound to give effect to the statutory language the legislature has chosen. *See* Tex. Gov't Code Ann. § 311.011(b).

Young urges that this construction of chapter 103 will sharply limit the numbers of wrongfully-imprisoned persons who can obtain compensation from the State. As recent events in Texas unfortunately confirm, it is not inconceivable that a truly innocent person could be convicted of a crime in this state and be sent to prison. Young questions whether the legislature, having waived sovereign immunity and provided a remedy whereby the wrongfully imprisoned can obtain a measure of recompense, would have intended to limit their recovery solely to cases where they obtain relief from their convictions via habeas corpus. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) (noting concept that statutory text should be given its plain meaning unless it leads to "absurd results" the legislature surely did not intend); *see also Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex. 1975) (acknowledging

16

a concept that "remedial" statutes should be construed broadly).  However, based on the statutory-construction principles that govern here—including the special principles that apply when construing asserted statutory waivers of sovereign immunity—we must conclude that the legislature intended to provide a remedy solely to the wrongfully convicted who cannot, for whatever reason, obtain relief through available direct appeals.  It is not absurd to suggest that the legislature would have considered such claimants—who have sometimes languished in prison for decades—as uniquely deserving of damages from the State, while perceiving a less-compelling interest among those who succeed in obtaining relief from their convictions on direct appeal.

This distinction also has potentially significant fiscal consequences.  *See* Tex. Gov't Code Ann. § 311.023(5) (we consider the consequences of a particular construction).  Under the version of chapter 103 in effect at the time of Young's suit, a claimant could recover up to $500,000.  Act of May 26, 2001, 77th Leg., R.S., ch. 1488, § 1, secs. 103.052, .105, 2001 Tex. Gen. Laws 5280, 5281-82 (amended 2007) (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 103.052(a), .105(c) (West Supp. 2007)).  If, as Young urges, the legislature waived sovereign immunity to permit wrongful-imprisonment claims by claimants whose convictions were set aside on direct appeals and not solely through habeas corpus relief based on "actual innocence," the fiscal consequences for the State could be dramatically more significant.  To preserve the legislature's control over such fiscal matters, we may not construe chapter 103 to waive sovereign immunity in this manner unless it expressed that intent through "clear and unambiguous language" Tex. Gov't Code Ann. § 311.034.  We cannot conclude that the language the legislature chose—which, again, is loaded with limiting implications from habeas corpus

17

jurisprudence—reflects the clarity and specificity necessary for us to construe it as extending beyond the limitations we have described.

Contrary to Young's suggestions, the fact that the legislature has provided *a* remedy for the wrongfully imprisoned does not alone imply anything about the breadth or availability of that remedy, as it remains the legislature's prerogative to balance the competing interests and decide the extent of the waiver. *Oakley*, 227 S.W.3d at 62; *see also* Tex. Const. art. III, § 51-c ("The Legislature may grant aid and compensation to any person who has heretofore paid a fine or served a sentence in prison . . . under the laws of this State for an offense for which he or she is not guilty, *under such regulations and limitations as the Legislature may deem expedient*.") (emphasis added). Like the Texas Supreme Court in *Oakley*, "We recognize that wrongfully imprisoned persons—trying to pick up the pieces of their lives after perhaps years of injustice," may have desperate need for compensation to that end. *Oakley*, 227 S.W.3d at 62. But, as the high court observed:

> the question before us is not one of policy but of statutory construction, and our duty is to give effect to the Legislature's intent. While the limitations in Chapter 103 may be harsh, the common-law rule was harsher still, entitling claimants to nothing from a state that wrongfully imprisoned them. As Chapter 103 is intended to ameliorate that rule, it is the Legislature's prerogative to set its boundaries.

*Id.* (citations omitted).

Young did not obtain relief from his criminal conviction based on "actual innocence," much less obtain habeas corpus relief from his conviction on that ground. Consequently, he has not

18

"been granted relief on the basis of actual innocence for the crime for which the person was sentenced," as the legislature used that phrase in chapter 103 of the civil practice and remedies code. We are bound to give effect to the legislature's intent. Accordingly, sovereign immunity bars Young's claims for damages from wrongful imprisonment.

We sustain the State's first issue, need not reach its second issue, and dismiss as moot Young's motions for judicial notice and the State's motion to strike. We reverse the district court's order and render judgment dismissing Young's suit for want of subject-matter jurisdiction.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered

Filed:   July 31, 2008

19